USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/31/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

ROGER KEY,

                Defendant.

12-Cr-712-1 (SHS)
18-Cv-7716 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

In 2014, after a two-week trial, a jury convicted Roger Key of six charges related to drug trafficking and two conspiracies to commit murder-for-hire. This Court sentenced Key to life imprisonment plus 30 years. The U.S. Court of Appeals for the Second Circuit affirmed. *United States v. Babilonia*, 854 F.3d 163 (2d Cir. 2017), *cert. denied sub nom.*, 138 S. Ct. 438 (2017). In 2018, Key, acting *pro se*, timely petitioned the Court to vacate his sentence through two procedural mechanisms: 28 U.S.C. § 2255 and Federal Rule of Civil Procedure 60(b) and (d). (Doc. Nos. 640, 645.) For the reasons that follow, petitioner's motions fail to establish that he is entitled to relief and are therefore denied.

I. BACKGROUND

In February 2014, Key was indicted on nine offenses in a superseding indictment. (Doc. No. 330.) The indictment included charges related to a narcotics conspiracy involving firearms (Counts I–II), the conspiracy and attempted murder-for-hire of Matthew Allen—the abusive boyfriend of Key's lover Aisha Babilonia (Counts III–V)—and the conspiracy and murder-for-hire of Terry Harrison, a rival drug dealer of Key's (Counts VI–IX).

In March 2014, Key proceeded to trial. The government put on a substantial case revealing that Key became a high-level drug distributor in Manhattan and the Bronx beginning in 2010, when he was released from a

period in custody. The government's case also included significant evidence that Key and others plotted to have Harrison and Allen killed. The government called 25 witnesses, including six cooperating witnesses. It introduced wiretap recordings of Key and coconspirators, narcotics paraphernalia, the gun used in the Allen attempted murder, a GPS device that coconspirators placed on Allen's car, bank records, phone and cell site records, and vehicular records. The defense elected not to call any witnesses. On April 2, 2014, the jury rendered its verdict, convicting Key on Counts I–VI (the drug trafficking charges, the Allen murder-for-hire charges, and the conspiracy to commit the Harrison murder-for-hire) and finding him not guilty on Counts VII–IX (the other Harrison murder-for-hire charges).

In March 2015, the Court sentenced Key to life imprisonment on Count I, 10 years concurrently on Counts III, IV, and VI, five years consecutively on Count II, and 25 years consecutively on Count V. The Second Circuit upheld Key's convictions on direct appeal, observing the significant and substantial evidence at trial against him. *Babilonia*, 854 F.3d at 181; *id.* at 173 ("The government called approximately 25 witnesses . . . and introduced wiretap records and physical records, including narcotics paraphernalia, a firearm, a photograph of items seized during the Car Stop, cell site records, phone records, Department of Motor Vehicle records, and bank records."). The U.S. Supreme Court denied Key's subsequent petition for a writ of certiorari. *Key v. United States*, 138 S. Ct. 438 (2017). Within 28 U.S.C. § 2255(f)'s one-year limitation period, Key filed the present motions. *See Rosa v. United States*, 785 F.3d 856, 859 (2d Cir. 2015).

## II. DISCUSSION OF KEY'S SECTION 2255 MOTION

Pursuant to 28 U.S.C. § 2255, the Court may vacate a petitioner's judgment if it determines "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Petitioner raises three avenues for relief in his Section 2255 motion. First, he offers myriad rationales for why his trial counsel's representation was

constitutionally inadequate. Next, he maintains that recent Supreme Court precedent renders one of the statutes that he was convicted of violating impermissibly vague. Finally, Key asserts that if the Court disposes of some of the counts against him, it must grant him a new trial on the remaining charges, due to the prejudicial impact of trying the drug and murder-for-hire charges simultaneously. As set forth below, none of petitioner's arguments state plausible claims for relief.

### A. Ineffective Assistance of Counsel

Key's central argument accuses his trial counsel of inadequate representation. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel performed below an objective standard of reasonableness and (2) but-for the deficiencies in counsel's representation, there exists a reasonable probability that the proceeding's outcome would have differed. *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 692–94 (1984)). Key must overcome a "strong presumption" that his attorney's conduct fell within the acceptable range of professional assistance and constituted a reasonable trial strategy. *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017) (citation omitted); *United States v. Nunez-Polanco*, 20 F. Supp. 3d 473, 477 (S.D.N.Y. 2014); *United States v. Brunshtein*, 545 F. Supp. 2d 357, 359–60 (S.D.N.Y. 2008). To satisfy the prejudice prong, Key must demonstrate a probability that sufficiently undermines confidence in the verdict. *Id.* Key fails to show that but-for the alleged deficiencies, considered alone or cumulatively, his convictions or sentence would have differed.

#### 1. Failure to Advise During Plea Negotiations

First, Key claims that he received ineffective representation during the plea-bargaining process. "Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). "Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S. 156, 166 (2012).

3

According to Key, his attorney learned about incriminating cell-site location information (CSLI) evidence the night before trial. (Tr. 1317–18, 1356–63.)[1] Because counsel allegedly had not known about this evidence, he did not investigate it. Thus, the attorney did not adequately advise Key about the weight of the government's case against him during earlier plea negotiations. In fact, Key alleges, he does not even recall his "lawyer advising [him] of the plea offer or what it was." (Doc. No. 660, Second Key Aff. ¶ 4.) Had Key known how inculpatory the CSLI was, he avers, he would have "accepted the plea offer extended pre-trial." (*Id.*; *see also* Doc. No. 640, First Key Aff. ¶ 3.)

The Court "need not accept . . . at face value" Key's uncorroborated statements that his counsel failed to inform him about the government's plea offer. *Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014). His claim is particularly incredible since the government stated clearly on the record during a pre-trial conference, at which Key was present, that an oral plea offer was made and had been rejected. (Doc. No. 380, Hr'g Tr. 2, 76.)

Regardless, Key cannot establish that he suffered any prejudice. Key must show a reasonable probability that a plea offer would have been presented to and accepted by the Court, and that his conviction or sentence would have been less severe. *Fulton v. Graham*, 802 F.3d 257, 266 (2d Cir. 2015). "[A] defendant may not rely solely on his own, self-serving statement post-verdict that he would have accepted a more favorable plea deal." *United States v. Bent*, 654 F. App'x 11, 13 (2d Cir. 2016). Thus, Key's promises, alone, that he would have pled are

---

[1] The government disputes this characterization, contending that it produced cell phone records on a rolling basis beginning in 2012. (*Id.* at 1358, 1361.) The exchange Key references involves an *exhibit*—produced the night prior—about the previously disclosed CSLI evidence, which the government called a demonstrative and the defense characterized as an improper expert report. (*Id.* at 1317.) The Court admitted this exhibit as a demonstrative. (*Id.* at 1362.)

4

insufficient. Additional "objective" evidence is required. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).[2]

Such evidence "may include a significant sentencing disparity between the sentence imposed and the sentence that effective counsel would have obtained for the defendant." *Bent*, 654 F. App'x at 13. Key points to the sentence of Ruben Davis, a co-conspirator who pled and received a 228-month sentence, as a plausible comparator. The government contends that Davis's plea offer is inapposite, because unlike Key, Davis faced no charges related to murder-for-hire. (Doc. No. 93.) Thus, Key received a more punitive pre-trial oral plea offer. Key's "suggestion that he would have received a sentence similar to those of his cooperating co-defendants is based on pure speculation, particularly since he has not demonstrated that he would have cooperated to a degree satisfactory to the government." *Zandi v. United States*, 460 F. App'x 51, 52–54 (2d Cir. 2012) (rejecting, without a hearing, defendant's argument, based on his sworn affidavit, that he would have accepted a plea offer). Because Key has not made any showing of "what sentence he would have received pursuant to a plea agreement," *id.* at 53, he has not demonstrated that he experienced prejudice as a result of any deficiencies in his counsel's representation during plea bargaining.

### 2. Failure to Suppress CSLI

Next, Key faults his trial counsel for not moving to suppress the CSLI, which the government obtained without a search warrant supported by probable cause. Four years after Key's trial, the Supreme Court held that the Fourth Amendment required such a warrant to collect CSLI. *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018). Although Key may wish that his attorney had been more prescient, "attorneys are not required to predict changes in the law." *United States v. Carrano*, 340 F. Supp. 3d 388,

---

[2] Moreover, the Court finds it particularly improbable that Key would have pled with more knowledge of the CSLI given the mountain of evidence against him. *See Babilonia*, 854 F.3d at 173 (listing the evidence at Key's trial, including 25 witnesses, wiretap, bank, phone, and Department of Motor Vehicle records, narcotics paraphernalia, and a firearm).

397 (S.D.N.Y. 2018) (rejecting defendant's *Strickland* argument that his attorney should have preemptively moved to suppress CSLI before *Carpenter* was issued).

Moreover, counsel's lack of objection caused petitioner no prejudice. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The government avers that the CSLI evidence was obtained pursuant to orders issued under Section 2703(d) of the Stored Communications Act. The Second Circuit has held that suppression is not required where law enforcement had collected CSLI in good faith reliance on the then-existing legal regime. *See United States v. Herron*, 762 F. App'x 25, 30–31 (2d Cir. 2019); *United States v. Chambers*, 751 F. App'x 44, 46–48 (2d Cir. 2018); *United States v. Zodhiates*, 901 F.3d 137, 143–44 (2d Cir. 2018). In addition, as already discussed, the significant amount of evidence presented at trial renders a different verdict implausible even absent the CSLI.

### 3. *Failure to Produce Witnesses Named in Opening Statement*

Key is also critical of his trial counsel for promising two witnesses in his opening remarks and then failing to produce them. In his opening statement, defense counsel told the jury the evidence would show that Babilonia received a text message from a man who implied that he had killed Allen.[3] (Tr. 39–41 (describing the text as stating "let's leave what's in the grave in the grave because I took care of your biggest headache").) He also told the jurors they would hear testimony from Michelle Smalls,

---

[3] Key was charged with attempted murder-for-hire of Allen rather than murder-for-hire itself because the individual tasked with murdering Allen failed to complete his task in two ways: he shot the wrong person, and that person survived. *See United States v. Babilonia*, 687 F. App'x 63, 66 (2d Cir. 2017); Def.-Appellant Babilonia's Br. at 6–7, *United States v. Babilonia*, No. 14-3739 (2d Cir. Apr. 14, 2015). A few weeks later, however, Allen was shot and killed. *Id.* at 7.

6

whose party promotion business with Key netted him $150,000. (*Id.* 45–46.) Over the course of the trial, both Babilonia and Smalls stopped cooperating with the defense. (*Id.* at 1442, 1092–93.) Trial counsel asked the Court to direct the government to grant Babilonia immunity, or to allow the text message to be admitted through a defense investigator. (*Id.* at 1443.) The Court recognized its lack of authority to order the government to immunize a witness, and it excluded the text message on hearsay grounds. (*Id.* at 1446, 1452.) With regard to Smalls, although she was expected to testify at one point (*id.* at 1204), she never took the stand.

Key argues that his attorney's actions harmed him in two ways. First, Key claims that the failure to produce those two witnesses allowed the jury to draw negative inferences from their absence. In support, he cites First and Seventh Circuit cases that found prejudice where a *critical* witness was named in an opening statement but never appeared. *See United States v. Gonzalez-Maldonado*, 115 F.3d 9, 14–15 (1st Cir. 1997) ("If the defense fails to produce promised expert testimony that is critical to the defense strategy, a danger arises that the jury will presume that the expert is unwilling to testify and the defense is flawed. . . . [T]he presumption formed in the minds of the jury is prejudicial."); *Harris v. Reed*, 894 F.2d 871, 877–79 (7th Cir. 1990); *Anderson v. Butler*, 858 F.2d 16, 17–19 (1st Cir. 1988) ("[L]ittle is more damaging than to fail to produce important evidence that had been promised in an opening."). Key believes that the witnesses' absences led the jury to disbelieve defense counsel's claims that another person was responsible for Allen's ultimate murder and that Key earned substantial legitimate income through party promotions. Moreover, Key continues, this inability to follow through likely led the jury to distrust defense counsel in general, tainting the entire trial.

However, unlike in the cited cases, Babilonia and Smalls's promised testimony did not lie at the heart of Key's defense. *See United States v. Mittal*, No. 98 CR. 1302, 2000 WL 1610799, at *4 (S.D.N.Y. Oct. 27, 2000) (contrasting the degree of the omission in that case with the major missteps in *Harris* and *Anderson*). Key was not charged with Allen's murder—just an earlier conspiracy and botched attempt. Whether a third person ultimately murdered Allen was not critical to the jury's determination on whether Key earlier conspired to have Allen killed. In

addition, the jury heard testimony that Key made money promoting parties, with Smalls or otherwise. (Tr. 1216–17, 1219, 1415–16.) Besides, engaging in a legitimate business venture is not incompatible with also having illicit dealings. Key has not shown how the addition of testimony from Babilonia or Smalls would have created a reasonable probability of his acquittal. He also has not demonstrated a general diminishment of the jury's trust in defense counsel—a particularly difficult feat when Key was acquitted on three counts.

Petitioner's second argument is that his counsel's conduct deprived him of his right to testify. According to Key, he prepared his testimony to align with that of Babilonia and Smalls. When they did not testify, neither could he, because he was not prepared to offer a different defense. (First Key Aff. ¶ 4.) "[D]efense counsel has a duty to inform the defendant" of his right to testify, including apprising him "of the benefits and risks of testifying." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011); *United States v. Siddiqui*, 699 F.3d 690, 705 (2d Cir. 2012). A failure to advise can support a *Strickland* claim, as long as the defendant can show "a reasonable probability that [petitioner's] proposed testimony would have altered the outcome of the trial." *Rega v. United States*, 263 F.3d 18, 21 (2d Cir. 2001). Besides the conclusory statement contained in his affidavit, Key fails to explain *how* the absence of these two witnesses impacted his testimony and what his proposed testimony would have included. And again, these witnesses' proffered testimony does little to exculpate Key. Petitioner has not demonstrated a reasonable probability that the jury's verdict would have differed.

### 4. *Failure to Ask the Jury to Find Drug Quantity Beyond a Reasonable Doubt*

Key claims his counsel was ineffective for failing to ask that the jury render its findings on the drug quantities implicated in Count I *beyond a*

8

*reasonable doubt.*[4] Because these findings increased the minimum sentence to mandatory life, he contends the jury had to determine the drug amounts at issue under the beyond a reasonable doubt standard pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013).

The government correctly observes that the mandatory nature of the life sentence pursuant to Section 841(b)(1)(A) followed most immediately from the filing of two prior felony informations. *See* 21 U.S.C. § 841(b)(1)(A) (2010).[5] Key's argument, properly understood, is as follows: but-for the jury's finding that Key conspired to distribute 280 grams or more of crack cocaine and 5 kilograms or more of powder cocaine, he would have been sentenced under Section 841(b)(1)(B). That provision contains no requirement mandating a life sentence for a defendant with two or more prior felony informations. 21 U.S.C. § 841(b)(1)(B) (2010) (setting a 10-year mandatory minimum for one prior felony drug conviction). Key also notes that the while the Court charged the jury with finding the drug quantity unanimously, it did not expressly instruct that the quantity had to be proven beyond a reasonable doubt. (Tr. 1987–88.) And the special verdict form did not specify standards of proof.

Yet, the Court did repeatedly task the jury with finding that the government proved its case beyond a reasonable doubt. (*E.g., id.* at 1942, 1945–47, 1949.) When instructing the jury on Count I specifically, the Court directed the jury to determine whether the alleged conspiracy, if found beyond a reasonable doubt, involved cocaine or crack cocaine beyond a reasonable doubt. (*Id.* 1973–87.) When juries are charged with deciding the amount of drugs involved in an offense and also receive numerous

---

[4] Key also asserts that the Court violated his rights in this regard, but that claim is procedurally defaulted. He did not raise this argument on direct appeal and has established neither cause, prejudice, nor actual innocence. *See, e.g., Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019). Petitioner's ineffective assistance of counsel claim, though, may be raised for the first time on collateral review. *See, e.g., Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).

[5] The First Step Act of 2018 lowered the mandatory minimums required under this provision, but those changes are not retroactive. Pub. L. No. 115-391, § 401(a)(2), (c), 132 Stat. 5194.

instructions about the government's burden of proof, they are presumed to understand that they are obligated to find the quantities under that standard. *See United States Delarosa*, 314 F. App'x 331, 332–33 (2d Cir. 2008); *accord United States v. Rivera-Ruperto*, 852 F.3d 1, 11–12 (1st Cir. 2017); *United States v. Barbour*, 393 F.3d 82, 89 (1st Cir. 2004). In the context of the entire charge, the jury undoubtedly understood that its quantity determination had to be proven beyond a reasonable doubt. Key fails to explain how any objection by his trial counsel to expressly include that language in the charge would have been reasonably likely to impact the verdict.

### 5. *Failure to Object to Prior-Offender Sentencing Enhancement*

Key challenges the mandatory nature of his life sentence on another ground: he believes his attorney should have objected to the Section 841(b)(1)(A) second-offender sentencing enhancement. When a person is convicted of narcotics distribution pursuant to Section 841(a), with the quantities of controlled substances outlined in subsection (b)(1)(A), a life sentence must be imposed if the defendant has "two or more prior [final] convictions for a felony drug offense." 21 U.S.C. § 841(b)(1)(A) (2010). Before trial, the government filed two prior felony informations pursuant to 21 U.S.C. § 851. (Doc. Nos. 355, 366.) Had only one prior felony information been filed, the statutory mandatory minimum on Count I would have been 20 years. 21 U.S.C. § 841(b)(1)(A) (2010). Petitioner argues that the offense specified in one of the prior felony informations did not qualify as a "felony drug offense" for purposes of Section 841. Thus, he says, the enhanced penalty was improperly applied, and his attorney was ineffective for not objecting.

In 1995, Key was convicted in New York State court of three counts of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39. Key argues that Section 220.39 criminalizes a broader category of conduct than the generic definition of a "felony drug offense" for purposes of Section 841, rendering the use of the second prior felony information to enhance his sentence improper.

Petitioner grounds his argument on *Mathis v. United States*, 136 S. Ct. 2243 (2016), decided after briefing but before oral argument in his direct

appeal. *Mathis* clarified and affirmed the existing analytical approach to determine whether an offense constitutes a "violent felony," for which prior convictions carry a mandatory minimum under the Armed Career Criminal Act (ACCA). Under that rule, the "categorical" approach, a past crime can serve as an ACCA predicate only if its elements are the same as or narrower than the elements of the generic version of the listed offense. *Id.* 2247. The "categorical" approach applies to indivisible statutes, which set out a single set of elements to define a single crime. *Id.* at 2248. For a statute that lists elements in the alternative, defining multiple crimes, a modified categorical approach must be taken, under which the particulars of the past conviction come into play. *Id.* at 2249. *Mathis* clarified that where statutes list different factual means of committing a single element, the statute remains indivisible and the categorical approach is the correct one. *Id.* at 2253, 2256. In support of his theory, Key also relies on *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), in which the Second Circuit determined that a conviction for criminal sale of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.31, did not constitute—under the categorical approach—an "aggravated felony" for purposes of the Immigration and Nationality Act. *Id.* at 63–68.

Even assuming *arguendo* that the categorical analysis is appropriate and applicable to New York Penal Law § 220.39, that statute's elements do not exceed the elements of the generic "felony drug offense." Section 220.39 criminalizes "knowingly and unlawfully sell[ing]" one of a list of types of substances.[6] Under the categorical approach, the elements are: (1) knowingly and (2) unlawfully (3) selling (4) a substance that satisfies one of those categories. *Cf. Harbin*, 860 F.3d 64–65. The definition of a "felony drug offense" as used in Section 841(b)(1)(A) can be found in 21 U.S.C. § 802(44). *See Burgess v. United States*, 553 U.S. 124, 126 (2008). Section 802(44) defines a felony drug offense according to two terms: (1) that it "is punishable by imprisonment for more than one year"; and (2) that it

---

[6] Section 220.39 has been amended since Key's convictions in January 1995. 1995 N.Y. Sess. Laws Ch. 75, § 7. (Doc. No. 366.) However, those changes do not affect the types of substances enumerated. *See id.*

11

"prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

On the first prong, Key was sentenced on these state charges to one to three years' imprisonment. (Doc. No. 366.) For the second, Key relies on *Harbin*'s observation that the state law at issue there treated chorionic gonadotropin as a controlled substance, while the federal law at issue did not. 860 F.3d at 68. *Harbin*, however, involved federal and state statutes that meaningfully differ from those involved in this case. Here, New York law criminalizes the knowing and unlawful sale of narcotic drugs, stimulants, hallucinogenic substances, LSD, methamphetamines, and phencyclidine. N.Y. Penal Law § 220.39. Under Section 802(44), a felony drug offense involves "narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances," which include all of the controlled substances named in the state statute. 21 U.S.C. § 802(44), (9), (16), (17), (41). "By the plain terms of the relevant statutes, someone who has been previously convicted of violating § 220.39(1) of the New York Penal Law is someone who has 'a prior conviction for a felony drug offense' under § 851. There is no need to employ the 'modified categorical approach' . . . ." *Williams v. United States*, Nos. 03-cr-795, 14-cv-4055, 2017 WL 2389580, at *6 (E.D.N.Y. June 1, 2017) (rejecting petitioner's claim that his conviction under New York Penal Law § 220.39 could not serve as a predicate for the prior-offender enhancement); *see also Reeves v. United States*, No. 96 CR 325, 2008 WL 4921764, at *3 (S.D.N.Y. Oct. 3, 2008) (striking down petitioner's argument that New York convictions for the criminal sale of a controlled substance in the third degree, with sentences of one-to-three years, did not qualify as a "felony drug offense" under Section 802(44)).

Thus, a violation of New York Penal Law § 220.39 constitutes a felony drug offense that can serve as a predicate for the second-offender sentencing enhancement. *Cf. United States v. Roman*, 464 F. App'x 32, 35 (2d Cir. 2012) (finding that a "conviction for violation of New York Penal Law § 220.16(1) plainly qualifies as a felony drug offense under the categorical approach," where that law for criminal possession of a controlled substance in the third degree contains a similar list to Section 220.39). Because Key's argument fails on the merits, he cannot establish any prejudice caused by counsel's omission of this argument at sentencing.

### B. Impact of *Johnson* on Section 924(c) Conviction

In the wake of recent Supreme Court precedent finding similar statutory language unconstitutionally vague, Key asks the Court to vacate his conviction under Count V for violating 18 U.S.C. § 924(c): possessing, using, or carrying a firearm during "any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The indictment set forth that firearms charge in connection with Counts III and IV, which charged, respectively, conspiracy to commit murder-for-hire and attempted murder-for-hire. *See* 18 U.S.C. §§ 1958, 2. Section 924(c) defines a "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the force clause) or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (risk-of-force or residual clause). 18 U.S.C. § 924(c)(3).

The Supreme Court has struck down as unconstitutionally vague other statutes' risk-of-force clauses containing similar language. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (striking the residual clause of 18 U.S.C. § 16(b)); *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (same for 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act). Key anticipates that Section 924(c)(3)'s risk-of-force clause suffers from the same infirmity, an issue presently under consideration by the Supreme Court. *United States v. Davis*, No. 18-431 (2019). He argues for vacating the conviction because one of the predicate acts—Count III's conspiracy charge—does not qualify as a crime of violence under the force clause. Although attempted murder-for-hire does, the jury did not return a special verdict unanimously tying Count IV to the Section 924(c) conviction. *See In re Gomez*, 830 F.3d 1225, 1227–28 (11th Cir. 2016).

Key's claim is procedurally defaulted. *Johnson*, decided on June 2015, was issued prior to Key filing his appellate brief in January 2016. Def.-Appellant Key's Br., *United States v. Key*, No. 15-1057 (2d Cir. Jan. 29, 2016). Yet he did not raise the *Johnson* argument. Thus, his argument is defaulted. *See Mayes v. United States*, Nos. 1:12-CR-0385, 1:17-CV-6789, 2018 WL 4558419, at *4 (E.D.N.Y. Sept. 21, 2018) (finding a similar

13

argument likely procedurally barred where petitioner failed to raise the argument in his direct appeal, filed after *Johnson* was decided); *Forman v. United States*, Nos. 16 Civ. 5185, 15 Cr. 237, 2017 WL 1434477, at *2 (S.D.N.Y. Apr. 20, 2017) (finding procedural default where similar argument was not raised on direct appeal); *cf. Banol-Ramos v. United States*, Nos. 09cr498, 16cv3791, 16cv6522, 2018 WL 1441357, at *3 (S.D.N.Y. Mar. 22, 2018) (holding that petitioner's *Johnson* argument was defaulted when not raised in her direct appeal). That is, unless he can show good cause to excuse the default and resulting prejudice or actual innocence. *Gupta*, 913 F.3d at 84; *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). Contrary to Key's assertion, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011). Even accepting Key's contention that his appellate counsel's ineffectiveness for not raising this issue on direct appeal suffices to show cause, *see Morales v. United States*, 651 F. App'x 1, 5 (2d Cir. 2016), petitioner suffered no prejudice, because his *Johnson* argument fails under controlling Second Circuit precedent. While recognizing the similarities of the statutes involved in *Johnson* and *Dimaya*, the Second Circuit has determined that Section 924(c)'s risk-of-force clause does not suffer from the same constitutional flaws as its statutory cousins. *United States v. Barrett*, 903 F.3d 166, 175–77 (2d Cir. 2018).

### C. Retroactive Misjoinder

Key argues that if the Court vacates the charges related to the alleged murders-for-hire (Counts III–VI), then the Court should vacate the narcotics offenses (Counts I–II).

"Retroactive misjoinder" exists when later developments, such as the reversal of some of defendant's counts of conviction, render the initial joint pursuit of the charges improper. *United States v. Hamilton*, 334 F.3d 170, 181 (2d Cir. 2003). To qualify for a new trial on this ground, a defendant must demonstrate compelling prejudice. *Id.* at 181–82. One avenue to meet this burden is to show a prejudicial spillover from evidence that was used to obtain a later-vacated conviction. *Id.* at 182. To determine whether such spillover existed, the Court undertakes a three-

part inquiry, considering: (1) whether the evidence supporting the vacated count would inflame the jury into convicting on other counts; (2) whether the vacated and remaining counts were similar; and (3) the strength of the government's remaining evidence. *United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006). Key claims prejudicial spillover because the murder-for-hire charges were significantly more egregious and inflammatory than the drug charges, and the government's case centered on evidence relating to those conspiracies. Because the Court is not vacating Key's conviction on any counts, this argument is foreclosed—just as it was on petitioner's direct appeal. *Babilonia*, 854 F.3d at 174 n.8.

### D. Evidentiary Hearing and Appointment of Counsel

Finally, Key requests an evidentiary hearing and the appointment of counsel. A petitioner is entitled to an evidentiary hearing—except where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In particular, "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor*, 647 F.3d at 494. "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

No evidentiary hearing is necessary here because Key has not raised any plausible claim for relief. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Petitioner has not put forth factual allegations that could overcome the substantial record to show he has "suffered prejudice from any hypothetical ineffective assistance of counsel." *United States v. Huggins*, Nos. 13-Cr-155, 18-Cv-5433, 2019 WL 697293, at *5 (S.D.N.Y. Feb. 20, 2019). Moreover, Key's remaining claims for relief are foreclosed as a matter of law.

Because Key's request for an evidentiary hearing is denied, the Court is not required to appoint counsel. *Nappy v. United States*, Nos. 13 CV 5888, 94 CR 656, 2013 WL 6405171, at *1 (S.D.N.Y. Dec. 5, 2013); *see also Quinones v. United States*, 637 F. App'x 42, 45 n.4 (2d Cir. 2016). Although the Court has the discretion to appoint counsel if "the interests of justice so require,"

18 U.S.C. § 3006A(a)(2)(B), that is not the case here, where Key's claims lack merit. *See, e.g., Mason v. United States*, Nos. 04 Civ. 2198, S 17 96 CR 126, 2009 WL 1250158, at *2–*3 (S.D.N.Y. May 6, 2009). Key's application for appointment of counsel is denied.

### III. DISCUSSION OF KEY'S RULE 60 MOTION

In addition to his habeas petition, Key has filed a motion for relief pursuant to Federal Rule of Civil Procedure 60(b) and (d). Pursuant to Rule 60(b), a court may relieve a party from a final judgment on grounds such as an opposing party's fraud, a void judgment, or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3), (4), (6). A Rule 60(b) motion for relief as a result of fraud must be made within one year after the entry of judgment. Fed. R. Civ. P. 60(c)(1). However, Rule 60(b)(4) and (6) motions need only be made within a "reasonable time." *Id.* Rule 60(d) also allows a court, without any time constraint, to entertain an independent action for relief from a judgment or to set aside a judgment for fraud on the court. Fed. R. Civ. P. 60(d)(1), (3).

A district court has discretion in deciding whether to grant a Rule 60(b) motion. *Pena v. United States*, 334 F. Supp. 3d 578, 580 (S.D.N.Y. 2018). For relief pursuant to Rule 60(b)(3), a movant must show, by clear and convincing evidence, that the opposing party's fraud or misconduct prevented him from fully and fairly presenting his case. *Koch v. Pechota*, 632 F. App'x 24, 26 (2d Cir. 2016); *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004). A judgment is void pursuant to Rule 60(b)(4) only if the court lacked personal or subject matter jurisdiction, or if it acted in a manner inconsistent with due process. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011); *Chen v. United States*, Nos. 03-CR-734-4, 12-CV-3904, 2016 WL 519617, at *3 (S.D.N.Y. Feb. 3, 2016). Relief under Rule 60(b)(6) is only warranted under "extraordinary circumstances" or "extreme hardship." *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (citation omitted); *see also Chen*, 2016 WL 519617, at *3.

To obtain relief under Rule 60(d), movants must (1) establish that they lack another available or adequate remedy; (2) demonstrate that they did not cause the situation for which they seek equitable relief; and (3) show a

recognized ground—like fraud, accident, or mistake—for the equitable relief. *In re Hoti Enters., L.P.*, 549 F. App'x 43, 44 (2d Cir. 2014). Because such relief is only available to prevent "a grave miscarriage of justice," any alleged fraud on the court must seriously undermine the integrity of the previous adjudication and must be established by clear and convincing evidence. *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182 (2d Cir. 2010); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).

The thrust of Key's Rule 60 motion centers on the allegedly improper execution of the Oath of Office and Appointment Affidavit ("OOAA") by one of the prosecutors. Specifically, the copy that Key received pursuant to FOIA of the OOAA for Assistant U.S. Attorney (AUSA) Abigail Kurland was neither signed nor notarized. (Doc. No. 645, Ex. C.) Thus, Key argues, Kurland's participation in the case tainted the prosecution. In particular, he contends that her presence in front of the grand jury, despite her lack of authorization to serve as an attorney for the government, requires dismissal of the indictment. *See* Fed. R. Crim. P. 6(d)(1) (only allowing to be present while the grand jury is in session government lawyers, witnesses, interpreters, and court reporters); *United States v. Pignatiello*, 582 F. Supp. 251 (D. Colo. 1981). *But see United States v. Kilpatrick*, 821 F.2d 1456, 1468 (10th Cir. 1987) (rejecting any "*per se* rule of dismissal for Rule 6(d) violations" absent prejudice).

First, Key's motion, filed in November 2018, is untimely to the extent he relies on Rule 60(b)(3). He made this motion over three years after this Court entered its judgment in March 2015. Rule 60(c)(1) makes no exceptions for the pendency of the appellate process. *Scholastic Inc. v. Stouffer*, 217 F. App'x 15, 16 (2d Cir. 2007) ("The filing of an appeal does not toll the one-year time period within which a Rule 60 motion alleging fraud or newly discovered evidence must be filed."); *Tavarez v. United States*, No. 96 CR. 895, 2010 WL 2102636, at *2 (S.D.N.Y. May 18, 2010) ("[T]he time taken for an appeal does not toll the running of [the Rule 60(c)(1)] limitation period.").

The Court may also dismiss Key's Rule 60 motion on its merits. Despite Key's accusations, the government offers a simple and innocuous explanation: the OOAA provided to Key pursuant to FOIA was partially

17

redacted. In its reply to Key's records request, the Executive Office for United States Attorneys specified that portions of records were withheld pursuant to the "(b)(6)" exemption. (Doc. No. 645, Ex. B, at 1.) That exemption applies to personnel and similar files that, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). (*Id.* at 3.) In Kurland's appointment affidavit, someone handwrote "b6" on the signature lines for the appointee and officer. (Doc. No. 645, Ex. C.) The government's explanation—that these lines were redacted in white and then labeled with the applicable FOIA exemption—seems far more plausible than Key's baseless speculations. Key replies that the human resources specialist who allegedly signed the OOAA was not authorized to do so, but he lacks support for this bald assertion. Key offers no evidence that the human resources specialist was not a notary or an employee otherwise delegated the authority to administer the oath. *See* U.S. Office of Personnel Management, Guide to Processing Personnel Actions, ch. 3, 3-19 (2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa03.pdf.

Key has not presented sufficient evidence demonstrating that Kurland's OOAA was improperly executed—let alone that he was prevented from presenting a full defense, that the integrity of his trial or sentencing were undermined, or that the Court lacked jurisdiction over his prosecution, which was led by a team of AUSAs. Key's Rule 60(b) and (d) motion is denied.

## IV. CONCLUSION

Because petitioner has not stated a claim for relief pursuant to either 28 U.S.C. § 2255 or Rule 60, Key's motions are denied. Since he has not made a substantial showing of a constitutional injury, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). Additionally, the Court certifies that any appeal from the Order would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Dated: New York, New York
       May 31, 2019

SO ORDERED:

Sidney H. Stein, U.S.D.J.